IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:08-CV-159-F

| | | |
|---|---|---|
| BIG ROCK SPORTS, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ACUSPORT CORPORATION, | ) | |
|     Defendant. | ) | |

This matter is before the court for ruling on a number of pending motions:

DE-103    Big Rock's Motion to Strike Answer & Counterclaims

DE-131    Big Rock's Motion to Dismiss/Strike Amended Counterclaims

DE-134    Big Rock's Motion to Seal

DE-143    AcuSport's Motion to Seal

DE-144    Big Rock's Motion to Strike Affirmative Defenses

The order presumes familiarity with matters of record, including prior orders entered in this case.

## I. FACTUAL AND LEGAL SUMMARY

It is against a full-color backdrop that the motivations and machinations of the parties to this lawsuit best can be appreciated and assessed. The parties have, in various venues, formally and/or impliedly accused each other of stealing the other's electronically-stored confidential trade secrets and proprietary competitive information, including customer lists and profiles, pricing and sales data, and all types of other secret information each party contends is essential to maintaining its market position and continued viability in the competitive world of firearm, ammunition and shooting supply sales. In the instant lawsuit, Big Rock, a North Carolina corporation, has sued Ohio-based AcuSport under the federal Computer Fraud and Abuse Act,

18 U.S.C. § 1030 ("CFAA"), together with several supplemental North Carolina common law and statutory causes of action.

Although prior orders in this case have examined a variety of disputes that have arisen between the parties, the court deems it prudent to relate an overview of the applicable CFAA provisions as well as to shed some light on the parties' interactions, as revealed by documents of record, over the past several years.

A. The Computer Fraud and Abuse Act

The CFAA, enacted in 1984, was the first federal law to address computer crime. It originated as a criminal statute, and initially was directed only to important federal-interest computer crimes. *See* Orin S. Kerr, *Vagueness Challenges to the Computer Fraud and Abuse Act*, 94 MINN. L. REV. 1561, 1564-65 (2010). As information technology and applications increased exponentially over the next two decades, so did the scope of the CFAA. It now contains a private right of action, § 1030(g)[1] and it covers any "protected" computer, which is one used in or affecting interstate or foreign commerce or communication, thus making any computer with Internet access a subject of the statute's protection. *See* Thomas E. Booms, *Hacking Into Federal Court: Employee "Authorization" Under the Computer Fraud and Abuse Act*, 13 VAND. J. ENT. & TECH. L. 543, 545-46 (2011) (hereinafter "*Hacking*"). "With increasing numbers of employees using computers at work, employers have turned to the CFAA in situations where disloyal employees have pilfered company information from the employer's computer system." Katherine Mesenbring Field, *Agency, Code, or Contract: Determining Employees' Authorization Under the Computer Fraud and Abuse Act*, 107 MICH. L. REV. 819, 820 (2009).

---

[1] Unlike the Economic Espionage Act, 18 U.S.C. §§ 1831-39 (2006), the CFAA, while providing for a private right to action, was not enacted with trade secret protection in mind; it is an anti-hacking statute. *See* Victoria A. Cundiff, *Reasonable Measures to Protect Trade Secrets in a Digital Environment*, 49 IDEA: THE INTELLECTUAL PROP. REV. 359, 378 (2009).

2

The CFAA penalizes "access" or intrusions to a computer system in which information is stored, although computer access, alone, does not implicate that statute. *See, e.g., Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 772 (N.D. Ohio 2008). Provisions of the CFAA pertinent to this case are as follows.

First, the CFAA forbids conduct by which anyone,

> who knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

18 U.S.C. § 1030(a)(4). The private right of action provision, contained in § 1030(g), states,

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

*Id.* at § 1030(g).

The statute defines "exceeds authorized access" to mean to "access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* at § 1030(e)(6). The CFAA does not, however, define "unauthorized access."

" '[D]amage' means any impairment to the integrity or availability of data, a program, a system, or information." *Id.* at § 1030 (e)(8). " 'Loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue

3

lost, cost incurred, or other consequential damages incurred because of interruption of service."
*Id.* at § 1030(e)(11).

Although the parties to this action have sued or attempted to sue each other under a variety of state laws as well as the private right of action section of the CFAA, § 1030(g), their theories of liability are different. The factual predicates for these different underlying theories is significant to the context of this litigation.

B. The Parties' Theories

Big Rock's theory of AcuSport's liability under the CFAA, as advanced in its original [DE-1], First [DE-4] and Second Amended [DE-28] Complaints, is that between December 2005, and at least March 7, 2008, AcuSport "hacked" into Big Rock's computer system and/or website and/or otherwise gained unauthorized access to protected passwords, log-information and other Big Rock confidential, proprietary data stored electronically therein, which AcuSport then used to its economic advantage causing damage and loss to Big Rock.

AcuSport's theory is that since 2007, at least two of its named former employees engaged in a conspiracy with up to 20 "John Does" to steal AcuSport's allegedly confidential sales and marketing information and other trade secrets by using the authorization they had been granted as employees to access AcuSport's computers.[2] AcuSport further alleges that these employees

---

[2] On November 26, 2008, AcuSport instituted a lawsuit against its former employees, Renda and Hinch, in California state court. *AcuSport v. Renda, et al.*, No. SCV23695 (Superior Court of Placer County, CA) (DE-34], Exh. A (hereinafter "California Complaint" or "California case"). AcuSport's California Complaint contained 16 claims for relief, one of which was pursuant to the CFAA, the factual basis for which AcuSport later attempted to raise as a North Carolina state law-based counterclaim in this litigation. *Id.* The confidential information allegedly stolen by AcuSport's former employees is described in its California Complaint as follows:

> AcuSport's business research, including the research techniques and the resulting conclusions, findings, data, and the organization of such research, as well as AcuSport's proprietary products and processes are confidential and secret. These include AcuSport's regional sales and vendor reports, its products, prices, marketing strategies; information regarding how much business

4

supplied all that secret and confidential information to Big Rock,[3] then they quit and went to work for Big Rock. In other words, Big Rock's theory is that AcuSport *directly* "hacked" into Big Rock's computers or otherwise gained unauthorized access to Big Rock's computerized proprietary data over a period of about three years, while AcuSport contends it was the victim of a scheme by which its own employees used their authorized access to enter AcuSport's computers to collect and misappropriate AcuSport's confidential data, then relay it to Big Rock, *indirectly*. It does not appear that AcuSport has accused Big Rock itself of hacking into AcuSport computers or databases.

Big Rock's theory describes the manner of access traditionally addressed by the CFAA. *See, e.g., Hacking,* at p. 548. AcuSport's CFAA sabotage theory by which its competitor acquired confidential, proprietary information *indirectly*, via disloyal employee-insiders, has become a popular tool to punish such individuals who use their authorized access to company computers and databases to collect, destroy or download proprietary information, then quit the company to start their own competing businesses or, as AcuSport contends, to work for a competitor.[4] *See id.* at pp. 546-47. Whether and how the CFAA applies to this "indirect" method by which employees obtain and misappropriate confidential data or trade secrets

---

> AcuSport's top customers generate, how much its customers are worth including their prospective economic value; as well as how AcuSport identifies its customers, their needs, and their complete financial history with AcuSport (collectively 'Confidential Information')."

California Complaint at ¶ 14.

[3] Although Big Rock is mentioned in the body of the California Complaint, it never has been a named defendant.

[4] AcuSport claimed that named defendants Renda and Hinch, both long-time employees and top performers in the company "were not only instrumental in compiling some of the company's Confidential Information, but they also had access to AcuSport's regional sales and vendor reports folder which contain the 'keys to AcuSport's kingdom.' " California Complaint [DE-34], Exh. A, ¶ 21.

5

contrary to the interests of their employer is the subject of a raging circuit split over the correct interpretation of the CFAA terms, "without authorization" and "exceeds authorized access."[5]

---

[5] To date, nearly all *circuit* courts that have been forced to construe the "authorization" language of § 1030(g) have taken what generally is referred to as the "broad" view of the statute that tends to favor employers. The "broad" view is that an employee who was authorized to use this employer's computer and to access proprietary information in performing his job immediately breaches his duty of loyalty to the employer (and thereby is "unauthorized") if he uses the information so accessed against his employer's economic interest. The "broad" view incorporates general "agency" principles. *See, e.g., Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006).

In September 2009, the Ninth Circuit Court of Appeals announced *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), becoming the lone circuit court to date to adopt the "narrow" construction of the "authorization" language. At bottom, the "narrow" view is that if an employer *ever* gave an employee permission to access its computers and databases in conjunction with the employee's work duties, then the employee's subsequent "use" of the information contained therein never is "unauthorized," and misappropriation of the information against the economic interests of the employer is not a CFAA violation. The "narrow" view tends to favor the employee. A recent district court case within the Fourth Circuit made the following observations,

> While the Fourth Circuit has not ruled on the issue, recent district court opinions within the Fourth Circuit suggest "authorization" does not turn on an employee's intended use of information in a manner that is adverse to employer interests or policy. *See Océ North Amer., Inc. v. MCS Servs., Inc.*, No. WMN10-CV-984, 2010 WL 3703277, at *4 (D. Md. Sept. 16, 2010) (holding that while an employee remained employed by the company, he had authorization to use computers and computer software and that "copying software onto his own laptop may have been a violation of his employment agreement, but that does not constitute a violation of the CFAA"); *Cvent, Inc. v. Eventbrite, Inc.*, No. 1:10-CV-00481, 2010 WL 3732183, at *4 (E.D. Va. Sept. 15, 2010) (noting that "a mere allegation that a defendant 'used the information [which it had been given lawful authority to access] in an inappropriate way' did not state a claim for relief [under the CFAA]") (quoting *State Analysis, Inc. v. Amer. Fin. Servs., Assoc.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009)).

*WEC Carolina Energy Solutions, LLC v. Miller*, No. 0:10-CV-2775-CMC, 2011 WL 379458 (D.S.C. Feb. 3, 2011), *pending on appeal*, No. 11-1201, 2011 WL 2619514 (4th Cir.).

The motions now pending do not require this court to enter into the CFAA "authorization" interpretation fray. The court mentions it simply in an effort to sharpen the focus and outline the stakes of the parties to this controversy.

6

## II. BIG ROCK'S MOTION TO DISMISS/STRIKE AMENDED COUNTERCLAIMS – DE-131

Big Rock initiated this litigation against AcuSport, by Complaint filed on September 10, 2008, alleging that AcuSport wrongfully obtained passwords and login information, accessed Big Rock's protected computers without authorization, and misappropriated Big Rock's purported confidential and proprietary information to gain an unfair advantage in competition, resulting in compensable damage and loss, and entitling Big Rock to injunctive relief under the CFAA and state law. *See* Complaint [DE-1]. Anticipating AcuSport's intentions, Big Rock on November 26, 2008, filed a First Amended Complaint [DE-4] that added a claim seeking declaratory judgment that Big Rock "had not engaged in a scheme, either acting alone or in conjunction with AcuSport's former employees, to misappropriate information from AcuSport . . ." *Id.* at Prayer for Relief, at ¶ 6.

On that *same day*, AcuSport filed the California Complaint, [DE-34] Exh. A, suing two of its former employees under 16 state and federal causes of action, including an alleged violation of the CFAA by engaging in a scheme to systematically gain unauthorized (or excessive) computer access to AcuSport's electronically stored data, and thereby to misappropriate AcuSport's alleged confidential business information, including trade secrets, marketing strategies, and sensitive customer information, and to use that information to benefit competitor, Big Rock.

In January 2009, AcuSport moved to dismiss Big Rock's First Amended Complaint, *see* [DE-12], arguing that the court should decline to exercise jurisdiction over Big Rock's declaratory judgment claim because it represented a "procedural manipulation of forums and actions," Memorandum [DE-13] at p. 24 (citation omitted), and constituted a "disfavored race to the courthouse," *id.* (citation omitted). AcuSport complained that even as Big Rock filed its First Amended Complaint containing a prayer for declaratory relief, Big Rock was "fully aware

7

that AcuSport intends to pursue legal relief against Big Rock for its wrongful attempts to misappropriate confidential information." *Id.*

Rather than respond in opposition to AcuSport's Motion to Dismiss [DE-12], Big Rock filed a Motion for Leave to File Second Amended Complaint [DE-15] on January 26, 2009, that omitted some state claims but still contained the declaratory judgment claim, renumbered as "Seventh Claim for Relief." Shortly thereafter, the parties requested and received an extension of their mediation deadline, and the pending motions were held in abeyance. Mediation efforts, however, were not successful, *see* Status Report [DE-24], and the case went forward with a substitution of counsel for AcuSport.

On May 3, 2010, fifteen months after AcuSport's motion to dismiss was filed, the court issued an order [DE-27] allowing Big Rock's Motion for Leave to File Second Amended Complaint [DE-15], with specific revisions, and denying AcuSport's Motion to Dismiss the First Amended Complaint [DE-12] as moot. In so ruling, the court noted that "AcuSport admits it has not filed an action concerning Big Rock's alleged misappropriation of trade secrets in any other court." Order [DE-27] at p. 31. The order continued as follows:

> Although it is true that races to the courthouse are disfavored, in this case there is no other pending action. The court agrees with Big Rock that under the circumstances, it would be inequitable to dismiss the declaratory judgment action just because, hypothetically, AcuSport may seek legal relief against Big Rock. Accordingly, the court will not decline to exercise jurisdiction over Big Rock's declaratory judgment claim.

*Id.* A footnote added, however, "[i]n the event that AcuSport does file a separate legal action, the court would entertain another motion to dismiss [this declaratory judgment claim] by AcuSport." *Id.* at p. 31, n.5. In other words, based on AcuSport's representation that it had not yet sued Big Rock but was intending to do so, the court declined to relinquish jurisdiction over Big Rock's declaratory judgment claim seeking exoneration from liability for alleged participation in a scheme to misappropriate trade secrets, *without prejudice* to AcuSport to

8

Case 4:08-cv-00159-F   Document 169   Filed 09/26/11   Page 8 of 18

renew its motion to dismiss *if and when* AcuSport in fact brought such an action against Big Rock.

Although AcuSport repeatedly has assured at least three different courts that it will substitute Big Rock for one of the several "John Does" in the California Case it has not done so, citing the need to collect more evidence from and against Big Rock in order to assemble a factual predicate for liability under the CFAA. To that end, AcuSport was able to procure a non-party subpoena *duces tecum* from a North Carolina state court directing Big Rock to produce in the California Case a large volume of what Big Rock describes as its confidential information. AcuSport's alleged subsequent use of the subpoenaed information to file counterclaims in this lawsuit is the subject of a pending motion for sanctions in the issuing state court. The subpoena was served on Big Rock on April 7, 2010.

Big Rock filed its Second Amended Complaint [DE-28] as directed. AcuSport in short order sought a Certificate of Appealability of this court's choice-of-law ruling in the May 2010, order [DE-27], and contemporaneously filed a Motion to Dismiss and Strike [DE-33] Big Rock's declaratory judgment claim re-pleaded in the Second Amended Complaint. In support of the latter motion, AcuSport referred to the court's May 2010, order [DE-27], stating, *inter alia*,

> The Court declined to dismiss [the declaratory judgment claim] of the First Amended Complaint. . . , partly under the belief that, at the time of the filing, AcuSport had not yet filed an action concerning Big Rock's alleged misappropriation in any other jurisdiction. Nonetheless, the Court stated that "[i]n the event that AcuSport *does* file a separate legal action, the court would entertain another motion to dismiss by AcuSport." (Citation omitted). AcuSport has filed an action in the state court of California directed towards Big Rock's misappropriation and has served discovery on Big Rock based on the facts as alleged in Big Rock's declaratory judgment action.

AcuSport Memorandum [DE-34] at p. 1 (citing the California Complaint, attached thereto as Exhibit A). This careful wording creates the impression that the condition under which the court suggested it might entertain another motion to dismiss in fact had occurred; that is, the juxtaposition of the last sentence of the above-quoted paragraph immediately after the sentence

9

preceding it implied that the "separate legal action" had been filed, thus rendering dismissal of Big Rock's declaratory judgment claim appropriate. In fact, AcuSport had not initiated a "separate legal action" against Big Rock.

In support of dismissal, AcuSport insisted that the purported scheme to misappropriate AcuSport's confidential information that was the subject of Big Rock's declaratory judgment claim was "completely unrelated to the claims directed to AcuSport's alleged misconduct pled in [Big Rock's] Counts One through Six of the Second Amended Complaint." *Id.* at pp. 2-3. Furthermore, AcuSport alleged that the "sole purported factual basis for [Big Rock's declaratory judgment] claim consists entirely of" confidential information disclosed by AcuSport to Big Rock during settlement discussions that occurred between November 21 and 26, 2008. *See* Affidavit of Christopher M. Chiafullo, [DE-34], Exhibit B. Nevertheless, AcuSport continued by advising this court that, "[b]ecause Big Rock's conduct already is the subject of pending litigation commenced by AcuSport, Count Seven [Big Rock's declaratory judgment claim] amounts to nothing more than an attempt to create parallel and hypothetical litigation that *is duplicative of, and overlaps with, an actual pending case.*" *Id.* at pp. 2-3 (emphasis added).

Meanwhile, on July 27, 2010, AcuSport had moved the North Carolina state court to compel Big Rock's compliance with the subpoena for document production in the California case. A Protective Order entered by the state court on September 22, 2010, included the provision that AcuSport could disclose the subject documents only pursuant to carefully detailed instructions and be used only in the California litigation. *See* Protective Order [DE-64], Exh. A. Big Rock had begun producing documents responsive to the Carteret County subpoena in December 2010, and it completed that production in February 2011.

In its February 9, 2011, order [DE-55], the court noted that AcuSport had not, in fact, substituted Big Rock for one of the "John Doe" defendants, and concluded that the California Case therefore was not a "parallel proceeding." *See* Order [DE-55], at pp.12-13. Nevertheless,

the undersigned in the exercise of discretion, declined to exercise jurisdiction over Big Rock's declaratory judgment claim in order to avoid excessive entanglement between this court and the California state court, and to prevent piecemeal litigation and inefficiency. *See id.* On that rationale, the court allowed AcuSport's motion to dismiss Big Rock's declaratory judgment claim (Count Seven of the Second Amended Complaint), and denied as moot AcuSport's motion to strike that claim. *See id.* at p. 14.

A couple of weeks after its success in having Big Rock's declaratory judgment claim excised from this lawsuit, and notwithstanding the representations it made and inferences it urged in doing so, AcuSport attempted offensively to re-insert the whole ex-employee sabotage scheme into this litigation by way of new counterclaims contained in its Answer to Second Amended Complaint and Counterclaims [DE-61] (also including affirmative defenses), filed February 23, 2011. Two days after Big Rock moved to strike AcuSport's affirmative defenses [DE-103] on April 18, 2011, AcuSport filed its Amended Answer and Amended Counterclaims [DE-106], also containing amended affirmative defenses.

AcuSport's Amended Counterclaims I, II and III in [DE-61] all are North Carolina causes of action. Notwithstanding AcuSport's strained argument to the contrary, the court finds that Amended Counterclaim I, in fact places AcuSport in a position *directly contrary* to the one asserted in its Motion to Dismiss [DE-33] Big Rock's declaratory judgment claim. That is, Amended Counterclaim I, claiming a misappropriation of trade secrets in violation of N.C. GEN. STAT. §§ 66-152, *et seq.*, is based on *exactly* the same factual predicate as Big Rock's declaratory judgment claim that AcuSport previously had insisted to this court was unrelated and irrelevant to this lawsuit and was the subject of the CFAA cause of action in the California Case.

The court agrees with Big Rock that such manipulation of the process is precluded by operation of "judicial estoppel" which itself arises from basic principles of fundamental fairness. The court ADOPTS Big Rock's memoranda in support of its Motion to Dismiss, or in the

11

Alternative, to Strike [DE-132] and its Reply [DE-146] *insofar as* they are based on judicial estoppel grounds, and ORDERS that AcuSport's Amended Counterclaims I, II and III [DE-106] hereby are STRICKEN and are DISMISSED with prejudice from this action by virtue of the equitable doctrine of judicial estoppel.

Furthermore, Amended Counterclaim I also is subject to dismissal because it fails to state a claim for relief cognizable under applicable state law, as noted below. Similarly, with regard to AcuSport's Amended Counterclaims II and III claiming unfair competition pursuant to N.C. GEN. STAT. § 75-1.1 and North Carolina common law, the court agrees with Big Rock that the facts AcuSport alleges in support of those claims are not governed by North Carolina law [6] and, therefore, do not state a claim upon which relief may be granted. Those claims also are DISMISSED for failure to state a claim pursuant to Rule 12(b)(6), FED. R. CIV. P.

Having so ruled, the court need not decide Big Rock's additional ground for dismissing or striking the Amended Counterclaims – that AcuSport necessarily violated the Carteret County Superior Court's Protective Order in order to inform its allegations in the Amended Counterclaims. The court takes note that Big Rock filed a motion for sanctions in the state court on March 2, 2011, alleging that AcuSport breached the Protective Order's provisions that:

> 5.1. AcuSport can *disclose* the documents only to Qualified Persons as defined in §§ 10(a) and (b) of the Protective Order.

---

[6] The same conclusion would be dictated by applying either a *lex loci* analysis or a "most substantial relationships" test. *See* Order [DE-27], filed May 4, 2010, at pp. 11-24. AcuSport's theory of the operation of this scheme was that Big Rock caused AcuSport employees in California (and perhaps in other states not including North Carolina, *see* [DE-106], Counterclaims, at pp. 10-11, ¶¶ 8 & 9) to misuse confidential instructions, log-in information and credentials to enter, via AcuSport's secure VPN, into AcuSport's database(s) to misappropriate AcuSport's confidential and proprietary data, resulting in injury and damages to AcuSport, which is located in Ohio.

Indeed, AcuSport's 35-page, 16-claim California Complaint alleges that "defendants resides [sic] in this Judicial District and . . . the events giving rise to this Complaint occurred, were accomplished, and had their effect in this Judicial District." California Complaint [DE-34]. Exh. A, at ¶ 7.

> 5.2. Pursuant to § 5(d) of the Protective Order, any court filing "involving the submission of information" designated Confidential or Confidential-Attorneys Eyes Only must bear a notation at its beginning noting that it contains such information and must be filed *under seal*.
>
> 5.3. Pursuant to § 9 of the Protective Order, AcuSport's *use* of designated Confidential and Confidential Attorney's Eyes Only information is limited to the California Lawsuit.

Big-Rock's Reply [DE-69], Exhibit A, at p. 2 (emphasis added). The state court judge has not yet ruled on Big Rock's motion for sanctions.

### III. Big Rock's Motion to Dismiss Affirmative Defenses DE-144

Big Rock also has filed a Motion to Dismiss AcuSport's Affirmative Defenses contained in the Amended Answer and Counterclaims. *See* [DE-144]. Specifically, Big Rock contends that AcuSport's first, second and fourth affirmative defenses, even as amended, are legally deficient.

A. First Affirmative Defense – Failure to State a Claim

Big Rock explains that the court should strike AcuSport's first affirmative defense – that Big Rock's Second Amended Complaint fails to state a claim for relief under Rule 12(b)(6), FED. R. CIV. P. – because the court already has denied AcuSport's prior attempts at dismissal. *See* [DE-27][7] and [DE-55][8]. In response, AcuSport insists it has not attempted previously to move to dismiss the Second Amended Complaint for failure to state a claim, *see* AcuSport's Response [DE-151] at p. 2, and that, in any event, it simply "raised these affirmative defenses to preserve its rights on appeal." *Id.* at p. 4.

---

[7] Order allowing Big Rock to file its Second Amended Complaint, as modified, and denying AcuSport's Motion to Dismiss [DE-12] Big Rock's Amended Complaint [DE-4] as moot.

[8] Order denying AcuSport's Motion to Dismiss Big Rock's Claim Seven (for declaratory relief) [DE-33] for failure to state a claim, but declining to exercise jurisdiction over Claim Seven in light of AcuSport's representations that the allegations therein were unrelated to this lawsuit and in fact would be resolved in the California litigation. The court noted therein that it was the second time AcuSport had sought to prevent this court from entertaining Big Rock's declaratory judgment claim. *See* Order [DE-55] at pp. 5-6; 13, n.2.

AcuSport is mistaken that this court has not already examined the legal sufficiency of Big Rock's CFAA claims contained in its Second Amended Complaint. Because AcuSport's arguments opposing leave for Big Rock to file that complaint and those seeking its dismissal essentially were the same, the court addressed the former first, and, by implication, rejected the latter. *See* Order [DE-27] at p. 6. The court concluded that, "[r]eading the allegations in the Proposed Second Amended Complaint as a whole, Big Rock has alleged that it incurred losses that exceed $5,000, without consideration of the lost profits. AcuSport's arguments regarding standing are without merit." *Id.* at p. 9. That is, the court determined that Big Rock sufficiently had alleged "loss" and established standing under the CFAA, and that dismissal was inappropriate.

The court agreed with AcuSport that the Second Amended Complaint did not state a trafficking claim under the CFAA and denied Big Rock's Motion for Leave to Amend to that extent. *See id.* at p. 11. The court also agreed with AcuSport that Big Rock's attempt to state a claim for tortious interference with prospective economic advantage was futile. *See id.* at pp. 28-29. Because the court determined that North Carolina's choice-of-law applied to Big Rock's proposed amended claims, and that a North Carolina choice-of-law analysis indicated that North Carolina (rather than Ohio) law controls, the court rejected AcuSport's argument that the Second Amended Complaint was futile under Ohio law. *See id.* at pp. 11-24.

Describing the gravamen of the April 2010, order [DE-27], the court later summarized,

> Specifically, the court found that Big Rock stated a claim under the CFAA , . . . that North Carolina law should apply to Big Rock's state law claims[,] and that Big Rock had stated claims for computer trespass, violations of UDTPA, common law unfair competition, misappropriation of trade secrets, and unjust enrichment. The court denied AcuSport's motio[n] to dismiss as moot.

Order [DE-55] at 2-3. It was in that February 9, 2011, order [DE-55], that the court finally accepted AcuSport's invitation to decline to exercise jurisdiction over Big Rock's declaratory judgment claim and to dismiss that claim from this lawsuit. The court reasoned that failure "to

14

do so will result in piecemeal litigation, be inefficient, and have the potential for excessive entanglement between this court and the state court in the California action." *Id.* at p. 13.

Finally, because the record is plain that the court has determined that Big Rock's Second Amended Complaint is legally sufficient to state these remaining claims, and AcuSport has represented that it simply "raised these affirmative defenses to preserve its rights on appeal," [DE-151] at p. 4, the court declines to strike the first affirmative defense, but cautions AcuSport that it *will not revisit the legal sufficiency* of Big Rock's Second Amended Complaint to state claims on its remaining grounds stated therein.

B. Second Affirmative Defense – Unclean Hands

Incorporating by reference the factual allegations contained in its Counterclaims, AcuSport contends that "Big Rock's causes of action are barred by its unclean hands." First Amended Answer and Counterclaims [DE-106], at p. 8.

AcuSport's Counterclaims have been dismissed for the reasons stated herein. The court in its discretion ALLOWS Big Rock's Motion to Strike this second affirmative defense because it relies entirely on factual bases that AcuSport previously has represented are "unrelated" and "irrelevant" to Big Rock's well-pled allegations in the Second Amended Complaint. *See, e.g.*, Memorandum [DE-34] at 6-7. Furthermore, AcuSport consistently has assured the court that claims arising from its ex-employees' alleged misappropriation of AcuSport Confidential Information all are being litigated in the California Case and this court need not concern itself with them.

C. Fourth Affirmative Defense – Lack of Standing

In pertinent part, AcuSport alleges in its Fourth Affirmative Defense, that "Big Rock lacks standing to pursue a claim under the [CFAA] because it has not alleged, and cannot allege, any alleged loss or damage resulting from the damage or inoperability of computers as required by 18 U.S.C. § 1030(g)." Amended Answer & Counterclaims [DE-106], at p. 8. Of course, §

15

1030(g) does not require that a plaintiff prove that its computer hardware was rendered inoperable by the defendant's conduct. "[T]he term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

Furthermore, Big Rock is correct that this court already has found its loss and damage allegations legally sufficient to confer standing. As Big Rock recognizes,

> Whether Big Rock lacks standing to pursue a claim under the [CFAA] because it did not allege sufficient loss or damage was specifically argued as part of AcuSport's motion to dismiss. [DE-13 at 6-9]. The Court's May 3, 2010 Order substantively addressed that issue and closed the book on AcuSport's argument. After reviewing AcuSport's motion, the Court concluded that "AcuSport's arguments regarding standing are without merit." [DE-2 7, at 9]. The Court found that Big Rock had sufficiently pleaded loss or damage sufficient to bestow standing to pursue a CFAA claim. *Id.*

Big Rock's Memorandum [DE-145], at p. 4. AcuSport's suggestion that this earlier ruling doesn't count because it related to Big Rock's *First* Amended Complaint, rather than its Second Amended Complaint, is disingenuous. The Second Amended Complaint is even more specific in its loss allegations than the First, which the court found legally sufficient to confer standing.

Indeed, perhaps realizing that its Fourth Affirmative Defense was meritless, AcuSport has attempted to replace it with an entirely different allegation. AcuSport's Fourth Affirmative Defense as contained in its *Amended* Answer to Second Amended Complaint and Counterclaims [DE-106], at p. 8, is that "Big Rock lacks standing to pursue a claim under the [CFAA] because it has not alleged, and cannot allege, any alleged loss or damage resulting from the damage or inoperability of computers, as required by 18 U.S.C. § 1030(g)." In its Memorandum opposing Big Rock's motion to strike this Fourth Affirmative Defense, AcuSport contends that the "standing" issue remains open because "the question of whether Big Rock – as opposed to its customers – is the owner of the information at issue in Big Rock's [CFAA] claim and trade secret claim remains unresolved." Memorandum [DE-151], at p. 5.

16

Of course, ownership of information is neither the subject of the Fourth Affirmative Defense as pleaded, nor is it an element of a CFAA claim. "Standing" to prosecute a civil action under § 1030 is determined in terms of whether a plaintiff has incurred a "loss" by reason of an unauthorized access to a protected computer. This court already has rejected AcuSport's argument that Big Rock inadequately pled "loss" for purposes of standing under the CFAA. *See* Order [DE-27], at pp. 6-9.

Big Rock's Motion to Strike AcuSport's Fourth Affirmative Defense [DE-106], p. 8, is ALLOWED, because, at the least, the defense is insufficient, immaterial, irrelevant and, by now, impertinent. *See* Rule 12(f), FED. R. CIV. P.

### IV. Summary

Big Rock's Motion to Dismiss or to Strike AcuSports' Counterclaims [DE-131] is ALLOWED, and it is ORDERED that the Counterclaims designated in AcuSports' Amended Answer and Counterclaims [DE-106], pp. 9-21 (¶¶ 1-53) are DISMISSED with prejudice.

Big Rock's Motion to Strike Affirmative Defenses [DE-144] is DENIED as to the First Affirmative Defense (for preservation on appeal), and ALLOWED as to the Second and Fourth Affirmative Defenses.

The court ADOPTS the rationale set forth in Big Rock's Motion and Memorandum [DE-134], together with the parties' Protective Order [DE-101.1 & DE-102], for ruling that the Motions to Seal [DE-134] and [DE-143] are ALLOWED. The Clerk of Court is DIRECTED to maintain [DE-133] and [DE-142] UNDER SEAL.

Big Rock's Motion [DE-103] to Strike AcuSports' Affirmative Defenses [DE-61] is DENIED as MOOT.

What remain viable in this lawsuit are:

**A. Big Rock's claims in its Second Amended Complaint** [DE-28] based on:

1. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*;

2. Computer Trespass under N.C. GEN. STAT. § 14-458;

3. North Carolina Unfair and Deceptive Trade Practices Act under N.C. GEN. STAT. §§ 75-1.1, *et seq.*;

4. Unfair Competition under North Carolina common law;

5. Misappropriation of Trade Secrets under N.C. GEN. STAT. §§ 66-152, *et seq.*; and

6. Unjust Enrichment under North Carolina common law.

**B. AcuSport's Affirmative Defenses** [DE-106]:

First: Failure to State a Claim under Rule 12(b) (6), but only to preserve the issue for appeal;

Third: Statute of Limitations;

Fifth: Preemption.


SO ORDERED.

This, the 26th day of September, 2011.

*[signature]*
JAMES C. FOX
Senior United States District Judge